J-A09028-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: RECUSAL OF CHELSA WAGNER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: AARON CHANEY | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 904 WDA 2025 |

Appeal from the Order Entered June 30, 2025
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-25-001961

BEFORE: NICHOLS, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: July 28, 2026**

Aaron Chaney appeals from the order denying his petition for recusal. We affirm.

In February 2025, Chaney filed a petition for recusal of the Honorable Chelsa Wagner ("the Trial Judge"). He sought the Trial Judge's recusal from actions filed under the Abandoned and Blighted Property Conservatorship Act ("Conservatorship Act")[1] where Chaney or one of his entities is a party. Chaney alleged that he is a real estate developer, had "successfully rehabilitated hundreds of properties in Allegheny County," and "[m]any of the[] properties ha[d] been rehabilitated under the parameters of the

---

[1] **See** 68 P.S. §§ 1101-1120. The Conservatorship Act "authorizes a court to appoint a conservator to rehabilitate a deteriorating building . . . . The conservator is responsible for bringing buildings into municipal code compliance when owners fail to do so." **In re Conservatorship Proceeding in Rem by Germantown Conservancy, Inc.**, 995 A.2d 451, 453 (Pa.Cmwlth. 2010).

[Conservatorship Act]." Petition for Recusal, filed Feb. 21, 2025, at ¶¶ 1-3. He alleged that the Trial Judge had been assigned a "number of cases filed on behalf of [his] various entities." *Id.* at ¶ 4.

Chaney argued the Trial Judge should recuse herself because, in an action presided over by a different judge, a cousin of the Trial Judge's husband filed a petition to intervene. Chaney pointed out that an entity he owned, Penn Pioneers Enterprises, LLC ("Penn Pioneers"), had been appointed conservator over blighted property owned by Jean Verna Parnell, and that in that action, Jean Parnell's son Arnie Parnell ("Parnell") filed a petition to intervene. *Id.* at ¶¶ 7a-7b. Chaney alleged that Parnell is the first cousin of the Trial Judge's husband, but the Trial Judge did not disclose the connection. *Id.* at ¶ 7f.[2]

Chaney alleged that in a separate case, *Wholesale Properties, LLC v. 2846 Bvallies, LLC*, Docket No. CS-24-000033, the Trial Judge denied a continuance request. *Id* at ¶ 7d. He also asserted that on January 6, 2025, she held a hearing where she "admonished [Chaney] despite the property meeting, at a minimum, the four threshold criteria for filing." *Id.* at ¶ 7e.

Chaney further maintained that at a February 3, 2025 proceeding in a separate case, the Trial Judge "called into question the capacity of Mr. Chaney to serve as a conservator despite having been appointed conservator in over 150 cases and never having been removed for failing to satisfy his charge as conservator." *Id.* at ¶ 7g.

---

[2] The Trial Judge did not preside over the case in which Parnell intervened.

Chaney then argued that at a January 6, 2025 hearing,[3] the Trial Judge "repeatedly referred to being appointed as conservator as 'taking' of a property," which he maintains is "fundamentally not the function of the [Conservatorship Act]," as its purpose is "to rehabilitate blighted property." *Id.* at ¶ 7h. He maintained the language "exhibit[ed] a bias toward the [Conservatorship Act] based on [the Trial Judge's] famil[y's] experience with the act as a whole in that it's used to 'take' property as opposed to rehabilitate the same." *Id.* Chaney maintains that the Trial Judge's relationship with Parnell "calls into question the impartiality of such proceedings where [Chaney] is involved." *Id.* at ¶ 9.

At a hearing on the petition for recusal, Chaney testified that he owned a number of entities, including Penn Pioneer, that Penn Pioneer petitioned for a conservator for property at 3219 Parkview Avenue at a different docket, and that the court appointed Penn Pioneer conservator in October 2024. N.T., June 27, 2025, at 3. He testified that in January 2025, Parnell, the son of the listed owner of the Parkview Avenue property, contacted Penn Pioneer's counsel. *Id.* at 4. Chaney testified that he "researched Mr. Parnell" and "it turn[ed] out Mr. Parnell is related to the [Trial J]udge through her husband as a cousin." *Id.* Chaney's counsel showed him photographs from a post on the application "X" which showed Parnell with the Trial Judge's husband. *Id.* at 5-6. Chaney testified that in the petition to intervene filed by Parnell, Parnell asserted he

_____

[3] It appears this refers to the hearing that occurred in *Wholesale Properties, LLC v. 2846 Bvallies, LLC*, discussed above.

was in control of the Parkview Avenue property and was "adversely affected by the disposition of the property." *Id.* at 12. Chaney further testified that Parnell had "an active lawsuit against one of [Chaney's] entities, Community Reinvestment Partners, LLC." *Id.* at 13.

Chaney responded "yes" when asked whether there had been "inconsistent results in some of [his] cases before and after the petition to intervene." *Id.* He explained:

> We had a hearing for a vacant lot in October of 2024. There weren't any status reports that were filed on that vacant lot. We've been maintaining it, and the application for sale was approved. We had a follow-up hearing in January for a different vacant lot. And we had been maintaining that vacant lot and that final plan of abatement application for sale was denied. And the -- my attorney hadn't been submitting status reports, which he should have been doing. But we did present to the Court everything we had done from the start, or finished up to that point, of what had happened during that timeline.

*Id.* at 14.

During the recusal hearing, when the Trial Judge asked Chaney's counsel whether counsel was aware that the Trial Judge "had no involvement" in the case in which Parnell intervened, counsel stated, "Yes. Yes. But we're also asking – the request of the recusal would be from – because it's kind of unique in the Conservatorship Act in that it would be – we would ask for the recusal from future cases as well." *Id.* at 8.

The Trial Judge denied the petition for recusal. Chaney appealed. He raises the following issue:

> Whether [the Trial Judge] abused her discretion and erred as a matter of law where the evidence of a family member claiming to be prejudiced by the petitioner was sufficient to undermine public trust in the judiciary and require recusal.

Chaney's Br. at v (unnecessary capitalization omitted).

Generally, orders addressing motions for recusal are interlocutory and not immediately appealable. ***See, e.g., Rohm and Haas Co. v. Lin***, 992 A.2d 132, 149 (Pa.Super. 2010) (providing that "[a] motion for recusal is an interlocutory order"); ***see also In re Cumberland Cnty. Dist. Attorney's Office***, 330 A.3d 471, 473-474 & n.1 (Pa.Super. 2025) (per curiam) (finding the Commonwealth appeal of the denial of a petition for recusal was appealable pursuant to Pa.R.A.P. 311(d)).[4] However, here, the petition for recusal initiated this case, which was a stand-alone proceeding seeking the Trial Judge's recusal from all actions filed under the Conservatorship Act. ***See*** Docket, ***In re Recusal of Chelsea Wagner***, No. GD-25-1961. That petition and a motion for disqualification from the evidentiary hearing, which the court denied, were the only filings on the docket. ***Id.*** After the Trial Judge denied the petition for recusal, there were no outstanding claims or parties in the instant proceeding. In this context, we conclude that the order denying recusal

---

[4] In ***In re Cumberland County District Attorney's Office***, the Commonwealth filed, at a miscellaneous docket, "a motion seeking [a trial judge's] recusal from 'all criminal matters' due to allegations of 'bias on the part of [his] law clerk[, who acts as] a gatekeeper for [her] assigned [j]udge[.]'" 330 A.3d at 473-474. The Court there relied on ***Commonwealth v. White***, a plurality opinion, which permitted a Commonwealth appeal of a denial of a motion for recusal where the Commonwealth "certified in good faith that denial of its recusal motion will substantially handicap its prosecution of this case." 910 A.2d 648, 655 (Pa. 2006).

was a final order. *See* Pa.R.A.P. 341(b)(1) (providing a final order is an order that "disposes of all claims and of all parties"). Our jurisdiction is proper, and we proceed to the merits of Chaney's issues.

Chaney argues he presented evidence of a familial relationship between the Trial Judge's husband and an intervenor in a conservatorship case involving one of Chaney's entities. He argues such evidence "met the standard for recusal, which is that an appearance of impropriety or biasness [sic] exists based on the evidence presented." *Id.* at 3. He claims that the evidence of the familial relationship "combined with a culmination of inconsistent rulings, demonstrates a clear perception of bias toward [Chaney]." *Id.* He argues the Trial Judge has a familial connection "to not only [Chaney's] entities, but specifically to conservatorship cases involving [him] and his entities [that] creates [an] appearance of bias toward [him]." *Id.* at 3-4.

We review the denial of a motion to recuse for an abuse of discretion. *Lomas v. Kravitz*, 170 A.3d 380, 389 (Pa. 2017). "An abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record." *Id.* (quoting *Zappala v. Brandolini Prop. Mgmt., Inc.*, 909 A.2d 1272, 1284 (Pa. 2006)).

"[R]ecusal is required wherever there is substantial doubt as to the jurist's ability to preside impartially." *Rohm and Haas Co. v. Cont'l Cas. Co.*, 732 A.2d 1236, 1261 (Pa.Super. 1999). Further, "because the integrity

of the judiciary is compromised by the appearance of impropriety, a jurist's recusal is necessary where [the jurist's] behavior appears to be biased or prejudicial." *Id.* (citing *Commonwealth v. Benchoff*, 700 A.2d 1289 (Pa.Super. 1997)). The proponent for recusal "bears the burden of producing evidence that establishes bias, prejudice, or unfairness." *In re Bridgeport Fire Litig.*, 5 A.3d 1250, 1254 (Pa.Super. 2010) (citation omitted).

The Trial Judge found that the fact that her husband's cousin is an intervenor "in an unrelated case involving one of Mr. Chaney's companies in litigation presided over by another jurist" did not compromise her ability to be fair and impartial to Chaney and his related entities. Trial Ct. Op., filed Nov. 7, 2025, at 5, 10. The Trial Judge found the rulings against Chaney were based on "sound, non-biased rationale." *Id.* at 6. Regarding *Wholesale Properties LLC v. 2846 Bvallies LP*,[5] the Trial Judge pointed out that her decision in that matter to deny Chaney's motion for a continuance occurred prior to the filing of Parnell's petition to intervene in the other case. She stated that the respondent in *Wholesale Properties* "vigorously opposed any continuance of the hearing" and identified "real prejudice if any delay occurred." *Id.* She quoted her order, which noted that Chaney's request for a continuance cited a "'scheduling conflict' with no further specificity," and that the respondent contested the continuance, "citing the encumbrance th[e] lawsuit place[d]

---

[5] Chaney did not attach to his petition any document from other cases except Parnell's petition to intervene. He also did not introduce any documents from other cases at the evidentiary hearing. In his brief, he does not contest the Trial Judge's summary of the relevant cases.

upon its property." *Id.* at 7 (quoting Order, No. CS 24-33, dated Dec. 26, 2025). The Trial Judge pointed out in the order that the respondent had filed preliminary objections. She stated that if it had been "a case where the conservatorship [wa]s not being opposed, [she] would have allowed the continuance." *Id.* (citation omitted). However, because it was opposed and there continued to be "unanswered questions raised about the underlying Petition" she determined that the respondent was "entitled to have its 'day in court' to receive a final adjudication, as does the community, too, if the condition of the property is in fact in a woeful and blighted state as averred in the Petition." *Id.* (citation omitted). The Trial Judge noted that Chaney did not prevail on the merits of the hearing because she found that "he did not present evidence to establish the statutory factors mandated under the [Conservatorship] Act" and that she explained her reasoning "at length" in a January 8, 2025 order and January 31, 2025 opinion written for a Commonwealth Court appeal of the order. *Id.* She concluded that this "inconsistent ruling" was due to Chaney's failure to follow the rules and comply with the law, not because "of [her] Husband's cousin." *Id.* at 8.

As for *Steel Town Holdings, LP v. Edison*, No. GD 19-8036, the Trial Judge noted that in that case she presided over a hearing on Chaney's Final Plan on February 5, 2025, which was almost six years after Chaney's company became the conservator of a vacant lot. Trial Ct. Op. at 8. She noted that although a court order required the conservator to file annual reports, the record reflected that no annual reports had been filed. *Id.* She then noted that

under Section 1106(d)(3) of the Act, a conservator must submit a final plan for court approval, which is intended "to set forth all the improvements the [c]onservator needs to accomplish to eradicate the blight that had resulted in the Conservatorship in the first instance." *Id.* The Trial Judge noted that a final plan must include a cost estimate, finance plan, and description of all work to be done. *Id.* at 8-9. The Trial Judge stated that Chaney's company submitted a final plan that stated, "in its entirety: 'Continue to maintain the lot.'" *Id.* at 9 (emphasis omitted). The court found the plan inadequate:

> Not only did such a proposed Final Plan not comply with the Rules, but even if it did it would be impossible for the Court or anyone else to properly evaluate such a Final Plan since the Conservator disregarded its obligation to submit any Annual Reports and took no steps to correct this deficiency before the Hearing on the Final Plan.

*Id.* (emphasis omitted). The Trial Judge pointed out that at the recusal hearing Chaney acknowledged he did not follow the court order requiring annual reports. *Id.*

The Trial Judge noted that the events in ***Steel Town Holdings*** explained her "admonishment" of Chaney:

> [***Steel Town Holdings***] also provides necessary context for this Court's admonishment of Mr. Chaney, as referenced as a reason for recusal, that the Conservatorship Law does not exist for him to 'take' property. Because, if Mr. Chaney and his companies are going to remain the Conservator over property for years without filing mandated documents or taking the property out of Conservatorship, then this does in fact amount to a 'taking' of property and the employment of the Conservatorship Law in a way and for a purpose that its framers neither intended nor foresaw. Any statements this Court made to Mr. Chaney pertained to his compliance

with the Law and are applicable to every other litigant appearing before this Court.

*Id.*

The Trial Judge concluded:

> [I]t is within this context and upon this basis, that Mr. Chaney received his 'inconsistent result.' A result that had nothing whatsoever to do with [her] Husband's cousin, but everything to do with what struck [the Trial Judge] to be a blatant disregard of the Rules and the assumption that the Conservator can file anything, can take no action or any action, and still receive the approbation of the [c]ourt. As [she] made clear to Mr. Chaney, as [she] did with other litigants, this [c]ourt demands that the Rules be followed because the public trust demands it.

*Id.* at 9-10. The Trial Judge found she had no personal bias or prejudice toward Chaney that would render her incapable of fairly and properly adjudicating matters that involve him. *Id.* at 10.

The trial court did not abuse its discretion in denying the recusal motion. Chaney has presented no evidence that the trial judge has based, or will base, any decision on bias, prejudice, or unfairness. That her husband's cousin filed a petition to intervene in a conservatorship case over which she did not preside does not create an appearance of impropriety or impact her ability to fairly adjudicate cases filed under the Conservatorship Act involving Chaney. The instances Chaney cites to support his claim of bias fail to do so. Rather, the cases and rulings were based on the law.

Order affirmed.

Judge Nichols joins the memorandum.

Judge Sullivan files a concurring and dissenting statement.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/28/2026